IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JEFFREY A. DAVIS, | CIVIL NO. 14-00483 SOM/BMK |
| Plaintiff, | ORDER DISMISSING COMPLAINT BUT ALLOWING THE FILING OF AN AMENDED COMPLAINT |
| vs. | |
| KHNL/KGMB, LLC, a foreign limited liability company; RAYCOM MEDIA, INC., a foreign limited liability company; OAHU PUBLICATIONS, INC., a domestic profit corporation; UNIVERSITY OF HAWAII; STATE OF HAWAII; et al., | |
| Defendant. | |

## ORDER DISMISSING COMPLAINT BUT ALLOWING THE FILING OF AN AMENDED COMPLAINT

I.      INTRODUCTION.

Plaintiff Jeffrey A. Davis was a candidate for Governor of the State of Hawaii in the November 2014 election and received 1.7% of the vote.  Davis was not invited to participate in a televised debate sponsored by Defendant KHNL/KGMB, LLC, a news organization.  The three leading candidates participated in the debate, which was held at a conference room located at the University of Hawaii Cancer Center in Kakaako, near downtown Honolulu.  The conference center has glass windows.  Davis says he and his supporters went to the debate to exercise their free speech rights in a civil and nondisruptive manner by holding signs outside the conference center's glass windows.

Davis says his free speech rights were interfered with in violation of the First Amendment and state law when a private security guard attempted to prevent him from coming onto the property, threatened Davis with arrest if he did, and placed a hand on Davis's chest.  However, the Complaint lacks factual allegations supporting viable First Amendment claims actionable under 42 U.S.C. § 1983.  Specifically, the Complaint lacks allegations from which it can be inferred that the private security guard's actions can be considered state action for purposes of a § 1983 claim.  While the Complaint refers to other security guards employed by the University of Hawaii, a state institution, the Complaint does not allege that they knew about, condoned, or ratified the private security guard's conduct.  Nor does the Complaint include factual allegations indicating that any of the security guards intended to chill or deter Davis's speech, as there are no allegations that any of them knew what Davis intended to do on the property.  Davis's § 1983 claim and § 1983 conspiracy claim premised on the First Amendment are dismissed.  The court declines to exercise supplemental jurisdiction over the remaining state-law claims.

**II.      RULE 12(b)(6) STANDARD.**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court's review of the sufficiency of a complaint is generally limited to the contents of the complaint.  <u>Daniels-Hall</u>

v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sprewell
v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001);
Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).  If
matters outside the pleadings are considered, the Rule 12(b)(6)
motion is treated as one for summary judgment.  See Keams v.
Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997);
Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).  However,
courts may "consider certain materials--documents attached to the
complaint, documents incorporated by reference in the complaint,
or matters of judicial notice--without converting the motion to
dismiss into a motion for summary judgment."  United States v.
Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  Documents whose
contents are alleged in a complaint that are central to the
plaintiff's claim, and whose authenticity is not questioned by
any party may also be considered in ruling on a Rule 12(b)(6)
motion to dismiss.  See Daniels-Hall, 629 F.3d at 998; Branch v.
Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994).

On a Rule 12(b)(6) motion to dismiss, all allegations
of material fact are taken as true and construed in the light
most favorable to the nonmoving party.  Cousins v. Lockyer, 568
F.3d 1063, 1067 (9th Cir. 2009); Fed'n of African Am. Contractors
v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  However,
conclusory allegations of law, unwarranted deductions of fact,
and unreasonable inferences are insufficient to defeat a motion

to dismiss. Cousins, 568 F.3d at 1067; Sprewell, 266 F.3d at 988; Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996). Additionally, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. Sprewell, 266 F.3d at 988.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)).

"[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted); accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to

relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555. The complaint must "state a claim to relief that is plausible on its face." <u>Id.</u> at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 677.

III.      **BACKGROUND.**

On October 15, 2014, KGMB/KHNL and Oahu Publications held a televised gubernatorial debate at a conference room located at the University of Hawaii Cancer Center. <u>See</u> Complaint ¶ 14. Gubernatorial candidates David Ige, Duke Aiona, and Mufi Hannemann were invited to participate in the debate. Davis, the Libertarian Party's gubernatorial candidate, was not invited to participate in the debate. <u>Id.</u> ¶¶ 15-16. The court takes judicial notice of the certified election results from November 2014: Ige received 49.0% of the vote, Aiona received 36.7% of the vote, Hannemann received 11.6% of the vote, and Davis received 1.7% of the vote. <u>See</u> hawaii.gov/elections/results/2014/general/ (last visited May 6, 2014).

Davis says he and his supporters went to the debate anyway "to exercise their free speech rights in a civil and non-disruptive manner." <u>Id.</u> ¶ 17. Davis alleges that they intended

5

to carry signs, not to cause a commotion or demonstrate out loud. Id. ¶ 41. At the hearing on the present motion, Davis explained that he did not intend to go inside, only to hold signs outside the glass windows to the conference center in which the debate was being held. The Complaint does not mention either Davis's alleged intent to quietly hold signs outside the debate nor knowledge by KHNL/KGMB of this alleged intent at the time Davis showed up to the conference center.

Davis says that, when he and his supporters came to the edge of property that was being guarded, a private security guard hired by KHNL/KGMB was standing there holding a picture of Davis. Id. ¶¶ 18-19. This private security guard allegedly allowed Davis's supporters to walk towards the conference room in which the debate was being held, but told Davis that Davis himself could not come onto the property and would be arrested if he did. Id. ¶¶ 19-20. Davis says he told the guard, "Call the cops and have them arrest me," and proceeded to walk past the guard. Id. ¶¶ 21, 25. The private security guard then allegedly said into his walkie-talkie, "He's here, call the cops." Id. ¶ 26.

According to Davis, the private security guard stepped in front of Davis and said that, if Davis crossed a line in the sidewalk, Davis would be arrested. Id. ¶ 28. Davis says he asked the security guard whether he would be hit if he crossed the line and was told, "No." Id. ¶ 29. Davis then stepped over

the line.  The private security guard allegedly put his hand on Davis's chest at that point.  Davis nevertheless continued to walk forward until he came to three or four University of Hawaii security guards.  Id. ¶¶ 30-31.  Davis describes their demeanor as "intimidating," but does not allege that they said anything to him that "chilled" his speech or made any "chilling" movement. Id. ¶¶ 31-33.  At most, Davis alleges that the UH security guards were holding his picture.  Id. ¶¶ 33-34.

Davis says that he then sat down on a bench outside the convention room until Mark Platt, the program director for KHNL/KGMB, came out to talk with him.  Id. ¶¶ 35, 37.  Davis complained to Platt that Davis was not being allowed on the property.  Id. ¶ 39.  Platt allegedly told Davis that Davis was allowed on the property but that Platt did not want Davis to disrupt the debate.  Id. ¶ 40.  Davis says he assured Platt that he was not there to disrupt the debate, to cause a commotion, or even to demonstrate out loud, only to carry signs.  Id. ¶ 41.

Davis asked Platt whether the private security guard had been hired by KHNL/KGMB.  When Platt allegedly refused to answer that question, Davis says he told Platt, "You don't know me very well."  Platt allegedly responded, "Because I don't know you, I don't know what you'll do or what you won't do.  So, I don't need you to disrupt anything we have here."  Id. ¶¶ 42-45. Davis claims that he reiterated that he was not there to disrupt

the debate.  Platt then told Davis that he could watch the
debate.  Id. ¶¶ 46-47.  Davis's Complaint does not allege whether
he ultimately protested outside the conference center during the
debate.

**IV.      ANALYSIS.**

>     **A.    The Court Dismisses Counts I and III, Which Assert
>           Violations of 42 U.S.C. § 1983 Based on An Alleged
>           First Amendment Infringement.**

Count I of the Complaint asserts a violation of 42
U.S.C. § 1983 based on an alleged First Amendment infringement.
Count III asserts a conspiracy to violate § 1983.  Because no
viable federal claim is alleged, these claims are dismissed.

Section 1983 does not create any substantive rights; it
provides a cause of action against a person acting under color of
state law and depriving a plaintiff of rights established by the
Constitution or federal law.  To state a claim under § 1983, a
plaintiff must allege: (1) that a right secured by the
Constitution or laws of the United States was violated; and
(2) that the alleged violation was committed by a person acting
under color of law.  West v. Atkins, 487 U.S. 42, 48 (1988).  "A
person deprives another of a constitutional right, within the
meaning of section 1983, if he does an affirmative act,
participates in another's affirmative acts, or omits to perform
an act which he is legally required to do that causes the

deprivation of which the plaintiff complains." <u>Leer v. Murphy</u>,
844 F.2d 628, 633 (9th Cir. 1988).

KHNL/KGMB argues that it is not a state actor that can
be liable for a First Amendment infringement under § 1983.
Individuals and private entities are not normally liable for
violating most of the rights secured by the United States
Constitution.  Instead, most constitutional rights provide
protection from only government infringement.  <u>See</u> <u>Lugar v.</u>
<u>Edmondson Oil Co.</u>, 457 U.S. 922, 936 (1982).  The ultimate issue
in determining whether a person is subject to suit under § 1983
for an infringement of a constitutional right is whether the
alleged infringement is fairly attributable to the government.
<u>Id.</u>; <u>Sutton v. Providence St. Joseph Med. Ctr.</u>, 192 F.3d 826, 835
(9th Cir. 1999).  A two-part test is used to answer that
question:

> First, the deprivation must be caused by the
> exercise of some right or privilege created
> by the State or by a rule of conduct imposed
> by the [S]tate or by a person for whom the
> State is responsible. . . .  Second, the
> party charged with the deprivation must be a
> person who may fairly be said to be a state
> actor.  This may be because he is a state
> official, because he has acted together with
> or has obtained significant aid from state
> officials, or because his conduct is
> otherwise chargeable to the State.  Without a
> limit such as this, private parties could
> face constitutional litigation whenever they
> seek to rely on some state rule governing
> their interactions with the community
> surrounding them.

Lugar, 457 U.S. at 937.

        In determining whether a private party acted under
color of law for purposes of § 1983, this court starts with the
presumption that private conduct does not constitute governmental
action.  See Sutton, 192 F.3d at 835.  "In order for private
conduct to constitute governmental action, 'something more' must
be present."  Id. (quoting Lugar, 457 U.S. at 939).  Courts have
identified "four factors or tests to identify what constitutes
'something more': (1) public function, (2) joint action,
(3) governmental compulsion or coercion, and (4) governmental
nexus."  Id. at 835-36.  While this list of factors is helpful in
determining state action, there is no specific formula a court
must use.  Id. at 836; see also Ouzts v. Md. Nat'l Ins. Co., 505
F.2d 547, 550 (9th Cir. 1974) ("[T]here is no rigid formula for
measuring state action for purposes of section 1983 liability.
Rather, it is a process of sifting facts and weighing
circumstances which must lead us to a correct determination."
(quotation marks and citation omitted)).

        A private person may become a state actor and have
liability under § 1983 by conspiring with state officials,
engaging in joint activity with state officials, or becoming so
closely related to the state that his or her actions can be said
to be those of the state itself.  See Price v. Hawaii, 939 F.2d
702, 708 (9th Cir. 1991).  For a private party to be a state

actor for purposes of § 1983 based on joint action, there must be a "substantive degree of cooperative action." Sable Commc'ns of CA Inc. v. Pac. Tel & Tel. Co., 890 F.2d 184, 189 (9ᵗʰ Cir. 1989).

Davis's Complaint alleges that Defendants "interfered with and chilled speech and activities protected by the First Amendment." See Complaint ¶ 55. Davis alleges that he was going to the debate "to exercise . . . free speech rights in a civil and non-disruptive manner." Id. ¶ 17. He says he and his supporters planned to hold signs outside the conference center in which the debate was being held, not to cause any disturbance. Id. ¶ 41.

According to Davis, when he got to the edge of the University of Hawaii Cancer Center property, he was told by a private security guard holding Davis's picture that Davis could not enter and would be arrested if he did so, but his supporters were allowed to go onto the property. Id. ¶ 19. Davis says he told the security guard to "Call the cops and have me arrested." Id. ¶ 21. Eventually, the private security guard allegedly put a hand on Davis's chest, presumably to stop him, but Davis continued to walk toward the entrance of the conference room in which the debate was to occur. Davis stopped only when he saw three University of Hawaii security guards standing behind the private guard looking "intimidating." Id. ¶¶ 31-32. Davis ended

up remaining on the property after indicating he would not be disruptive.  Id. ¶¶ 37, 40, 45-47.

Davis's Complaint asserts the legal conclusion that a private security guard hired by KHNL/KGMB along with security personnel of the University of Hawaii acted in concert to prevent him from entering the debate.  See Complaint ¶¶ 18-19, 31-33. But this legal conclusion is not supported by factual allegations.  At most, Davis alleges that the private security guard and each of the University of Hawaii security guards had Davis's picture.  Id. at ¶¶ 19, 33-34.  This indicates that they were all on the lookout for Davis, not that they together intended to chill his speech, threaten him with arrest, or put a hand on his chest.  Without more, the Complaint fails to allege facts from which the private security guard's actions can be said to have constituted governmental action or to have occurred as part of a plan or agreement with the public security guards.  No viable claim under § 1983 is alleged, as Davis alleges neither facts supporting state action nor facts otherwise describing the violation of a right secured by the Constitution or laws of the United States.  See West, 487 U.S. at 48.

Davis is not claiming that he was prohibited from entering the conference hall during the debate or from holding a sign outside the debate where the sign could be seen from inside the conference room.  Instead, his First Amendment claim is

premised on the brief period beginning with the private security guard's alleged attempt to prevent him from proceeding, placement of a hand on Davis's chest, and/or threat to have him arrested if he did enter the property. Davis also alleged that the University of Hawaii guards subsequently stood in his path, looking "intimidating" and holding his picture. The security guards' possession of Davis's picture and the private security guard's statement to Davis not to enter the property suggest that Defendants may have been concerned that Davis intended to disrupt the debate out of dismay at not being invited to participate in the debate.

The Complaint does not allege that the private security guard had the power to arrest Davis. To the contrary, the Complaint alleges that Davis told the private security guard to call the police and that the security guard said into his walkie-talkie, "Call the cops." The Complaint does not allege who was told to "call the cops," and it does not suggest that the direction was aimed at the University of Hawaii security guards. Certainly, there is no allegation that the University of Hawaii security guards themselves threatened Davis with arrest or knew of or condoned the private security guards' alleged threat of arrest, direction to "call the cops," or placement of a hand on Davis's chest. The Complaint says only that the University of

Hawaii guards looked "intimidating" standing behind the private security guard.

Davis was ultimately allowed to remain on the property and watch the debate. The facts alleged by Davis do not indicate that he suffered a First Amendment violation. At most, the University of Hawaii guards may have blocked Davis's progress by standing in his way. But no facts are alleged indicating that the guards intended to chill or deter Davis's speech or that the guards even knew what Davis intended to do on the property. As the Ninth Circuit stated in <u>Lacey v. Maricopa County</u>, 649 F.3d 1118, 1132 (9th Cir. 2011), to demonstrate a First Amendment violation, a plaintiff must provide evidence showing that a defendant's actions deterred or chilled the plaintiff's protected speech and that such deterrence or chilling effect was a substantial or motivating factor in the defendant's conduct. Davis's Complaint lacks allegations sufficient to support a claim under <u>Lacey</u>.

The Complaint does not allege facts indicating that KHNL/KGMB, or anyone it might have controlled or been responsible for (such as, possibly, any private security guard), knew or should have known that Davis was trying to enter a public forum to exercise First Amendment rights. While the Complaint alleges that Davis and his supporters went to the debate to hold signs, it does not allege that Davis himself was carrying a sign or

otherwise indicate what could have been discerned by observers as suggesting that he himself intended to exercise free speech rights outside the debate in a nondisruptive manner.

Given the allegations that the security guards were allegedly all holding pictures of Davis, the court might infer that, before speaking with Davis, Defendants thought Davis was going to the televised debate to be disruptive.  No facts are alleged from which it can be reasonably inferred that the University of Hawaii security guards and the private security guard acted in concert with the intent of chilling or deterring Davis from peacefully demonstrating.

Davis correctly points out that, in <u>Mendocino Environmental Center v. Mendocino County</u>, 192 F.3d 1283, 1300 (9th Cir. 1999) ("<u>Mendocino II</u>"), the Ninth Circuit noted that a plaintiff need not demonstrate that his or her free speech was actually inhibited or suppressed to have a viable First Amendment retaliation claim.  Instead, a plaintiff need only demonstrate that a defendant intended to interfere with First Amendment rights to such a degree that "an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities."  <u>Id.</u>  The Ninth Circuit noted that it would be "unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity."  <u>Id.</u>

In <u>Mendocino II</u>, the plaintiffs were prominent leaders of an environmental activist group.  In May 1990, a bomb went off in a car driven by the plaintiffs.  The plaintiffs were arrested for having transported the bomb.  No charges were ultimately brought against the plaintiffs.  <u>See</u> 192 F.3d at 1287-88.

The Ninth Circuit described the plaintiffs' claims in an earlier order in the same case.  <u>See</u> 14 F.3d 457 (9th Cir. 1994) (<u>Mendocino I</u>).  In its <u>Mendocino I</u> order, the Ninth Circuit explained that the plaintiffs had asserted a free speech claim based on the concerted conduct of FBI agents and state officers in arresting plaintiffs.  The arrests were intended to and actually did disrupt, chill, and neutralize the plaintiffs' environmental activism--their free speech.  <u>Id.</u> at 464.  The plaintiffs had alleged that the FBI had pursued baseless investigations of other members of their group, and that the FBI had supplied false information to support the plaintiffs' arrests in order to chill their advocacy.  <u>Id.</u>

Unlike the plaintiffs discussed in <u>Mendocino I</u> and <u>II</u>, Davis does not allege facts indicating state action intended to interfere with his First Amendment rights to such a degree that a person of ordinary firmness would be chilled or silenced with respect to future First Amendment activities.  <u>Id.</u>, 192 F.3d at 1300.  Davis's allegations say nothing about how state actors contributed to keeping him off of property or preventing him from

watching the debate or protesting the debate in a nondisruptive manner.

There is no dispute that the University of Hawaii Cancer Center and its conference room are public properties that were being used by a private entity, KHNL/KGMB, for a televised debate. But no facts are alleged concerning state actors' participation in the specific actions complained about. If, after the private security guard allegedly threatened Davis with arrest and placed his hand on Davis's chest, the University of Hawaii Security guards joined the private security guard by looking "intimidating" and holding a picture of Davis, those actions, by themselves, do not appear to establish concerted action with respect to the private security guard's alleged demand that Davis stay off of the property on pain of arrest, or with respect to the placement of a hand on Davis's chest. Under the facts alleged, the court cannot infer any intent to chill or deter protected speech from the University security guards' "intimidating" appearance while holding a picture of Davis.

The court is unpersuaded by Davis's reliance on case law suggesting that, even if a chilling effect is not alleged, allegations of harm might suffice. See Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012); Rhodes v. Robinson, 408 F.3d 559, 568 n.11 (9th Cir. 2005). Those cases arose in the prison retaliation context, with the courts discussing how to proceed

when a prisoner does not allege a chilling effect.  The decisions noted that actual harm will almost always have the requisite chilling effect.  See Rhodes, 408 F.3d at 568 n.11.  Davis has not identified any conduct by a state actor that caused him harm such that a chilling effect can be inferred.  Saying that a private guard put a hand on his chest and that the University of Hawaii security personnel who later stood behind the private guard appeared "intimidating" is not saying that state actors joined in a First Amendment violation.

Nor is the court persuaded by Davis's reliance on cases suggesting that questions of fact are for the jury to decide.  On the present motion to dismiss, the court is not examining whether questions of fact exist that would preclude summary judgment.  Instead, the court is examining whether the allegations of the Complaint are sufficient to state a claim.

Having determined that the allegations of the Complaint are insufficient to allege viable § 1983 and conspiracy in violation of § 1983 claims, the court dismisses those claims.

### B.    The Court Declines to Exercise Supplemental Jurisdiction Over the Remaining State-Law Claims.

Given the dismissal of the claims conferring federal question jurisdiction, this court now considers whether it should exercise supplemental jurisdiction over the remaining state law claims. Supplemental jurisdiction, unlike federal question or diversity jurisdiction, is not mandatory.  A court may decline to

exercise supplemental jurisdiction over a state law claim if: (1) the claim raises a novel or complex issue of state law; (2) the state law claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367.

Supplemental jurisdiction is a doctrine of discretion, not of a plaintiff's right. See City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 172 (1997); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). When, as here, "the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." Gibbs, 383 U.S. at 726. Although the Supreme Court has stated that such a dismissal is not "a mandatory rule to be applied inflexibly in all cases," it has also recognized that, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

Having dismissed the federal question claims, the court declines to exercise supplemental jurisdiction over the remaining state-law claims and dismisses them. The court therefore need not examine the state-law First Amendment claim that Davis has agreed is governed under the same standard as its federal counterpart.

**V.      CONCLUSION.**

The court dismisses Davis's § 1983 and conspiracy to violate § 1983 claims and declines to exercise supplemental jurisdiction over the remaining state-law claims. Davis is given leave to file a motion seeking leave to file an Amended Complaint no later than June 10, 2015. Any such motion must attach a copy of the proposed Amended Complaint, which must be a complete document and shall not incorporate by reference any other document. Failure to file such a motion by that date will result in entry of judgment by the Clerk of Court in favor of Defendants.

Davis may alternatively want to consider filing any viable state-law claim in state court and then conducting

discovery to determine whether he has a factual basis for asserting a federal constitutional violation under § 1983 in an amended complaint.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 28, 2015.



　/s/ Susan Oki Mollway　
Susan Oki Mollway
Chief United States District Judge


Davis v. KHNL/KGMB, LLC, et al., Civ. No. 14-00483 SOM/RLP; ORDER DISMISSING COMPLAINT BUT ALLOWING THE FILING OF AN AMENDED COMPLAINT